543 So.2d 1332 (1989)
STATE of Louisiana
v.
Paul BURGESS and James L. Fitzgerald.
No. 88-KD-1314.
Supreme Court of Louisiana.
May 1, 1989.
*1333 William J. Guste, Jr., Atty. Gen., John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., for plaintiff-appellant.
A. Bruce Netterville, Gretna, for defendant-appellee.
MARCUS, Justice.
On October 28, 1987, Paul Burgess and James L. Fitzgerald were charged by bill of information with one count of violating La. R.S. 18:1463(B) and one count of violating La.R.S. 18:1463(C). The charges stemmed from a letter sent by the Westbank Citizens for Better Government during an election for state representative in district 87, supporting Burgess' candidacy and making statements against his opponent, N.J. Damico. The letter also included a copy of a campaign flyer used by Damico in a prior election, showing Damico and former governor Edwin Edwards standing together and captioned "[v]ote the Edwards/Damico team." The enclosed letter read "[l]et's break up this team before it breaks us!" The letter was signed by James L. Fitzgerald as president of the Westbank Citizens for Better Government. Defendants filed a motion to quash the bill of information on the ground that La.R.S. 18:1463(B) and (C) were unconstitutional. The trial judge, finding both sections unconstitutional, granted the motion to quash.[1] We granted the state's application for review and docketed the case as an appeal.[2]
La.R.S. 18:1463(B) and (C)(1) provide:
B. No person shall cause to be printed or assist in the distribution, transportation, or transmission by any means of any facsimile of an official ballot or cause to be printed, distributed, transported, or transmitted any unofficial sample ballot, writing, pamphlet, paper, photograph, or printed material, which falsely alleges that any candidate or group of candidates participating in a primary or general election are supported by or affiliated with another candidate, group of candidates, or other person, or a political faction.
C. (1) No person shall publish, distribute or transmit, or cause to be published, distributed, or transmitted, any oral, visual, *1334 or written material containing any statement which makes scurrilous, false, or irresponsible adverse comment about a candidate for election in a primary or general election or about a proposition to be submitted to the voters, unless the publication contains the name(s) of the person(s) responsible for its publication.[3]
The sole issue presented for our consideration is whether La.R.S. 18:1463(B) and (C)(1) are unconstitutional infringements on free speech.[4] We begin by considering La. R.S. 18:1463(C)(1).
In the seminal case of Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960), the United States Supreme Court declared unconstitutional a Los Angeles ordinance prohibiting the distribution of
any handbill in any place under any circumstances, which does not have printed on the cover, or the face thereof, the name and address of ... the person who printed, wrote, compiled or manufactured same [or] the person who caused the same to be distributed....
The Court reasoned that anonymity was important to freedom of expression under the first amendment. The state urged that the ordinance was aimed at providing a way to identify those responsible for fraud, false advertising and libel. The Court, rejecting this argument, stated:
[T]he ordinance is in no manner so limited, nor have we been referred to any legislative history indicating such a purpose. Therefore, we do not pass on the validity of an ordinance limited to prevent these or any other supposed evils. The ordinance simply bars all handbills under all circumstances anywhere that do not have the names and addresses printed on them in the place the ordinance requires.
In his concurrence, Justice Harlan noted that even given a showing that the ordinance was aimed at "obnoxious" handbills, "such a generality is for me too remote to furnish a constitutionally acceptable justification for the deterrent effect on free speech which this all-embracing ordinance is likely to have." In City of Bogalusa v. May, 252 La. 629, 212 So.2d 408 (1968), this court held unconstitutional a Bogulusa city ordinance similar to that in Talley. We quoted with approval the language of the trial judge, who stated "for an ordinance to be valid it must be narrowly drawn to avoid specific evils and that an ordinance couched in overly broad terms would not be sustained."
State v. Fulton, 337 So.2d 866 (La.1976), dealt with the predecessor statute to La.R. S. 18:1463(C)(1).[5] We found the only difference *1335 between this statute and the Talley ordinance was that the former was limited to handbills relative to or concerning any candidate for election or nomination. We found this limitation did not sufficiently narrow the statute to remove it from the scope of Talley and found no compelling state interest that would justify the statute. Accordingly, we declared the statute unconstitutional. Thereafter, the legislature redrafted the statute as La.R.S. 18:1463(C)(1), essentially limiting the prohibition against anonymity to those statements which make "scurrilous, false, or irresponsible adverse comment" about a "candidate for election" or a "proposition to be submitted to the voters."
As a threshold matter, the state argues that La.R.S. 18:1463(C)(1), unlike the statute struck down in Fulton, does not violate constitutional standards, since it merely forbids anonymous false statements designed to mislead voters in an election and such "lies and false statements" are not constitutionally protected. We disagree. The standard for constitutionally protected false speech in the context of public figures was given in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In that case, the Court held the Constitution prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct "unless he proves that the statement was made with `actual malice' that is, with knowledge that it was false or with reckless disregard of whether it was false or not." Although this standard was applied in the context of civil defamation suits, it is clear the standard defines the parameters of protected speech involving public figures. La.R.S. 18:1463(C)(1) by its very nature applies to public figures, but the term "false" as used by the legislature does not conform to the constitutional standard and includes protected speech.[6] In addition, the terms "scurrilous" and "irresponsible adverse comment" are so broad as to include both true speech and protected false speech about a candidate. Moreover, we find it particularly disturbing that this statute applies to "scurrilous, false, or irresponsible adverse comment" concerning "a proposition to be submitted to the voters." By impacting on the discussion of issues before the voters, this section of the statute comes close to regulating "pure speech," which is entitled to "comprehensive protection under the First Amendment." Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The Supreme Court has noted that "[u]nder the First Amendment there is no such thing as a false idea." Gertz v. Robert Welch, Inc., 418 U.S. 323, 341, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974). The first amendment is designed to protect discussions about "structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes." Mills v. Alabama, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966). Because La.R.S. 18:1463(C)(1) attempts to regulate the free discussion of candidates and propositions submitted to the voters, we find that it clearly impacts on speech protected by the first amendment.
However, such a finding does not end our inquiry. The state can regulate protected speech, but it cannot do so without bearing the burden of showing its restriction is justified. Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986). The restriction must be no greater than is necessary to protect the state's interest. Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). The state argues that the restriction is valid because it has a strong interest in seeing that voters know who is responsible for certain publications, in order that they can properly evaluate the *1336 statements contained in them and informatively exercise their right to vote.[7] We agree that the state has a strong interest in promoting fair elections. On the other hand, the right of free speech during an election is a powerful one. The Supreme Court has noted "there is practically universal agreement that a major purpose of [the first amendment] was to protect the free discussion of governmental affairs." Mills, supra. An important component of this right of free discussion is the right to publish anonymously. "Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all." Talley, supra. The state has presented no compelling reason why its interest in fair elections should outweigh the fundamental right of free anonymous political discussion. Indeed, the state has presented no evidence that anonymous "scurrilous, false, or irresponsible adverse comment" has any negative effect on elections. Although the legislature has attempted to narrow the statute from that declared unconstitutional in Fulton, we find it has failed to do so. The catagories of "scurrilous, false or irresponsible adverse comment" still significantly impact on protected speech. Given the fundamental constitutional rights involved and the lack of a compelling state interest, it is clear the balance must tip in favor of free speech. Therefore, we conclude that La.R. S. 18:1463(C)(1) is incompatible with basic guarantees under the federal and state constitutions.
Many of the same principles discussed in the context of La.R.S. 18:1463(C)(1) apply with equal force to La. R.S. 18:1463(B). Unlike La.R.S. 18:1463(C)(1), which only deals with anonymous information, La.R.S. 18:1463(B) goes further and seeks to prohibit all information "which falsely alleges that any candidate or group of candidates ... are supported by or affiliated with another candidate, group of candidates, or other person, or a political faction." It is clear the statute infringes significantly on protected speech. As we noted above, the state has advanced no compelling interest to justify prohibiting this class of protected speech. Therefore, La.R.S. 18:1463(B) must also fall as being unconstitutional.

DECREE
For the foregoing reasons, the judgment of the district court declaring La.R.S. 18:1463(B) and (C) unconstitutional and quashing the bill of information is affirmed.
NOTES
[1] The trial judge declared La.R.S. 18:1463(C) unconstitutional in its entirety. Since 1463(C)(2) and (3) are dependent on 1463(C)(1), the constitutionality of 1463(C)(1) will determine the validity of 1463(C)(2) and (3).
[2] 525 So.2d 1064 (La.1988).

This court has appellate jurisdiction in all cases in which a law of this state has been declared unconstitutional. La. Const. art. V, § 5(D)(1).
[3] In 1988, the legislature amended La.R.S. 18:1463(B) and (C)(1) as follows:

B. No person shall cause to be printed or assist in the distribution, transportation, or transmission by any means of any facsimile of an official ballot or cause to be printed, distributed, transported, or transmitted any unofficial sample ballot, writing, pamphlet, paper, photograph, statement, or printed material, which alleges that any candidate or group of candidates participating in a primary or general election are supported by or affiliated with another candidate, group of candidates, or other person, or a political faction without printing on such material the name and address of the individual or the name of association, organization, committee, or corporation and the full and correct name of its chairman or other chief administrative officer responsible for its publication and whether or not such individual, association, organization, committee, or corporation supports or opposes such candidate or candidates.
C. (1) No person shall cause to be distributed, or transmitted, any oral, visual, or written material containing any statement which he knows or should reasonably be expected to know makes a false statement about a candidate for election in a primary or general election or about a proposition to be submitted to the voters.
Since the conduct in the present case occurred prior to 1988, the amended statute is not before us.
[4] U.S. Const. amend. I provides in part: "Congress shall make no law ... abridging the freedom of speech, or of the press...." La. Const. art. I, § 7 provides: "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for an abuse of that freedom."
[5] The statute at issue in Fulton, La.R.S. 18:1531, provided in pertinent part:

No person shall publish or distribute or cause to be published or distributed any [statement] relative to or concerning any candidate for election ... unless it contains the name of the person responsible for its publication or distribution.
[6] Similarly, under La.R.S. 18:1463(D) this court refused to enjoin an opponent from airing a "false" television campaign advertisement, stating "[i]n a case of this kind, courts do not concern themselves with the truth or validity of the publication." Guste v. Connick, 515 So.2d 436 (La.1987).
[7] La.R.S. 18:1463(A) provides:

A. The Legislature of Louisiana finds that the state has a compelling interest in taking every necessary step to assure that all elections are held in a fair and ethical manner and finds that an election cannot be held in a fair and ethical manner when any candidate or other person is allowed to print or distribute any material which falsely alleges that a candidate is supported by or affiliated with another candidate, group of candidates, or other person, or a political faction, or to publish anonymous statements that make scurrilous, false, or irresponsible adverse comment about a candidate or a proposition. The legislature further finds that the people of this state have a right to know and that, among other things, it is essential to the protection of the electoral process that the people know who is responsible for such publications in order to more properly evaluate the statements contained in them and to informatively exercise their right to vote.