631 So.2d 1281 (1994)
STATE of Louisiana
v.
Michael DANIELS.
No. 93-KA-1769.
Court of Appeal of Louisiana, Fourth Circuit.
January 27, 1994.
*1282 Harry F. Connick, Dist. Atty. of Orleans Parish, Jack Peebles, Asst. Dist. Atty. of Orleans Parish, New Orleans, for plaintiff/appellee.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant/appellant.
Before BARRY, WARD and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
The appellant, Michael Daniels, was charged with possession of a firearm by a convicted felon, a violation of LSA R.S. 14:95.1. After the trial court denied a motion to suppress the evidence, the defendant entered a plea of guilty reserving his right to appeal the legality of the search and seizure under State v. Crosby, 338 So.2d 584 (La. 1976). The trial court sentenced the defendant to serve three years at hard labor without benefit of probation, parole or suspension of sentence. This appeal followed.

STATEMENT OF FACTS
On Thursday morning, May 27, 1993, at about seven o'clock, Officers Darren Demma and Richard Williams of the New Orleans Police Department were traveling in a marked police car in the 3900 block of Gibson Street, within the Housing Authority of New Orleans' St. Bernard development. They observed defendant walking a small bicycle and carrying a bicycle tire pump on his shoulder. The officers had not received a report of a stolen bicycle in the neighborhood. The police car stopped so that Daniels could cross the street. As Daniels did so, the officers believed he behaved nervously, and observed Daniels looking back over his shoulder at the police car. The officers decided to stop to question Daniels based on the following: [1] the bicycle was smaller than a man of Daniels' size would be expected to ride; [2] the housing development was a "high crime area;" [3] Daniels seemed to be nervous.
The officers pulled the police car into a driveway off Gibson Street. Daniels saw the officers leave their car and stopped. At that time, Daniels was no farther from the officers than the witness to examining counsel at the motion hearing. Williams told Daniels to approach the police car. Daniels obeyed, dropping the bicycle at his feet, and slowly approached the police car. Williams did a pat down search for weapons on Daniels' person and found a small .32 caliber semiautomatic weapon, whereupon Daniels was arrested. While Demma wrote up the police arrest report, Williams told him for the first time that, upon exiting the police car, he had noticed a bulge in the front pocket of Daniels' trousers which Williams thought, at the time, could be a weapon. (This piece of information was reported by police officer Demma at trial via hearsay; officer Williams did not testify at the hearing on Daniels' motion to suppress evidence.)

ASSIGNMENT OF ERROR
Appellant contends the trial court erred in denying his motion to suppress evidence.

ERRORS PATENT
A complete review of the record reveals no errors patent.

THE CONSTITUTIONAL ISSUE
We begin our review of the seizure of evidence in this case with the applicable provisions of the Louisiana Constitution of 1974. Article 1 § 5 provides:
"§ 5. Right to Privacy
"Section 5. Every person shall be secure in his person, property, ..., and effects *1283 against unreasonable searches, seizures or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
Louisiana enjoys the distinction of having a specifically denominated and defined constitutional right to privacy. The Louisiana Supreme Court recognized that:
"Article 1, Section 5, of the Louisiana Constitution of 1974 protects against unreasonable searches, seizures and invasions of privacy. This declaration of rights does not duplicate the Fourth Amendment [to the United States Constitution]. It represents a conscious choice by the citizens of Louisiana to give a `higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution.' State v. Hernandez, 410 So.2d 1381, 1385 (La.1982). State v. Church, 538 So.2d 993 (La.1989).
There was no warrant authorizing the officers to search Daniels' person or to seize his property or effects. The State relies on LSA-C.Cr.P. Art. 215.1 to justify the actions of Officers Williams and Demma:
Art. 215.1. Temporary questioning of persons in public places; frisk and search for weapons
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person...."
The issue, then, is whether officers Williams and Demma "reasonably suspect[ed]" that Daniels was committing, had committed, or was about to commit an offense when Daniels was stopped. A reasonable suspicion has been defined as articulable knowledge of particular facts which, in conjunction with reasonable inferences drawn therefrom, is sufficient to provide reasonable grounds to suspect criminal activity. State v. Bickham, 404 So.2d 929 (La.1981). The essential question for this court is whether the evidence available to the officers PRIOR TO THE STOP constituted reasonable cause to place Daniels on the police car and search his person.
The particular facts upon which the police relied were:
[1] the bicycle Daniels was walking was small;
[2] the incident took place in a New Orleans housing development deemed by the officers to be a "high crime area;" and
[3] Daniels seemed nervous when he saw the police, although the only specific "nervous behavior" described by Demma was Daniels' looking over his shoulder at the marked police car.
TESTIMONY OFFERED TO PROVE REASONABLE CAUSE TO STOP DEFENDANT
In order to determine the propriety of the police action that led to the discovery of Daniels' weapon, we look to the testimony of Officer Demma offered at the hearing on the defendant's motion to suppress. We must determine whether the facts upon which the police relied offered the basis for a reasonable belief on their part that Daniels had committed a crime, was about to commit a crime or was in the process of committing a crime. Demma testified to the following facts:
He saw Daniels walking a small bike, and carrying a bicycle pump on his shoulder, on a city street at about seven in the morning. This activity is consistent with Daniels' innocence.
The bike did not appear to belong to Daniels because of its size. This is consistent with Daniels' innocence as well. The *1284 presence of both the bike and the pump lead to a reasonable conclusion that the bike was in the process of being moved to be repaired or was being returned to use after such repair. Because of the bike's size, it is unlikely that its child owner could perform the repair herself, but would rely on the assistance of an adult, such as the defendant.
Daniels appeared to the officers to be nervous because he looked over his shoulder. This action is also consistent with Daniels' innocence. What citizen would not appear to be nervous to some degree in the presence of uniformed police officers in a marked police car? Clearly, the police do not have the right to conclude that any nervous gesture on the part of a citizen constitutes reasonable cause to believe that he or she is committing, had committed or is about to commit an offense.
The officer admitted that he did not see him commit a crime, and saw no evidence of criminal conduct, but he and his partner had decided to stop Daniels and to ask him questions.
His partner observed "something", unidentified, "immediately."[1]
Daniels, when stopped, told the officers the bike belonged to his niece. The same information was relayed to the officers by a passerby, who took possession of the bike in order to return it to Daniels' niece.
Demma testified that there were many complaints of stolen bicycles and stolen cars in the housing development area. He admitted, however, that there had been no specific report of any stolen bicycle, and particularly of a bike fitting the description of that being walked by Daniels. Complaints of stolen cars were clearly irrelevant to the officers' stop of Daniels. The State also made the cynical suggestion that they stopped Daniels in order to offer their assistance, but offered no evidence that there was reason to believe that their help was either needed or wanted.
Officer Demma's testimony reflects a clear mind set on the part of the patrolling officers to stop Daniels and to question him. Demma admitted that the only supportive evidence for the stop was the size of the bike, and Daniels' nervous gesture. We find that this is insufficient to constitute reasonable cause to believe that a crime had been committed, was being committed or was about to be committed.
We find that the particular facts articulated by the testifying officer do not constitute reasonable cause for an investigatory stop. While the bicycle was small, Demma admitted Daniels was also carrying a bicycle tire pump. It is not reasonable to assume that a person walking a bicycle and carrying a pump is a thief. Demma offered no evidence that bicycle thieves typically carry a tire pump as a necessary accoutrement of their illicit trade. The mere fact that the incident took place in a New Orleans public housing development does not of itself give rise to an inference of criminality. While "[h]ousing projects within the City of New Orleans are known to be high crime areas and centers for drug activity," State v. Ganier, 591 So.2d 1328, 1330 (4th Cir.1991), the mere fact that an incident took place in such a development does not relieve the State of its burden of *1285 showing reasonable cause for the infringement upon a Louisiana citizen's constitutionally protected privacy right. The Louisiana Constitution does not stop at the borders of New Orleans' housing projects.
The "nervous behavior" exhibited by Daniels likewise does not rise to the constitutional standard. Indeed, not since the saga of Lot's wife and the pillar of salt has so high a price been paid for looking over one's shoulder. It is unreasonable to assume that only a criminal would exhibit signs of nervousness in the presence of two uniformed police officers in a marked police car at 7 a.m. in the St. Bernard housing development.
Up to the point at which Daniels was put against the police car and patted for weapons, there was no evidence suggesting that the officers had reasonable cause to believe that he had committed a crime, was committing a crime, or was about to commit a crime. The evidence obtained following the illegal stop and illegal search cannot support either the search or the subsequent conviction.

DEFENDANT'S ACTIONS FOLLOWING THE ILLEGAL STOP
Unlike the defendants in Ganier, supra, State v. Harris, 613 So.2d 807 (La.App. 4th Cir.1993), and State v. Tucker, 619 So.2d 38 (La.1993) original opinion withdrawn from publication, rehearing granted, 626 So.2d 707 (La.1993), reinstated and reaffirmed on rehearing 626 So.2d 720 (La.1993), when he noticed the police, Daniels did not run. When called by Officer Williams, he walked toward the police car as ordered. Demma's testimony is totally devoid of any evidence that Daniels either fled, attempted to flee, or resisted in any way. Because Daniels submitted voluntarily to the show of police authority, we are not faced with a determination of when or if the police officers actual stopped or "imminently actually stopped" this defendant. In each of the above-noted Louisiana cases and in the United States Supreme Court's case interpreting California's far less liberal privacy clause, California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the defendants attempted to flee or did flee the scene. In the case at bar, it is clear that from the time the police car pulled into the Gibson Street driveway, Daniels submitted to the officers' authority. Daniels had been stopped at this point, even under the stringent standard of the sharply divided Louisiana Supreme Court in Tucker:
"[A]n individual has not been `actually stopped' unless he submits to a police show of authority or he is physically contacted by the police." Id., at p. 43.
Conversely, Daniels was actually stopped because he had submitted immediately to the police show of authority.
Application of the factors the Tucker court uses to determine the "imminency" of the stop leads to the conclusion that Daniels not only had submitted, but was also "imminently stopped." Tucker provides six standards to guide this determination:
the proximity of the police in relation to the defendant at the outset of the encounterin Daniels' case, the distance was described as no more than that between the trial witness and courtroom counsel, an undefined distance, but surely reasonably close for purposes of this analysis;
whether the individual has been surrounded by the policeDaniels was not surrounded, and might have been able to escape in the opposite direction from the approaching police officers, but made no move to do so;
whether the police approached the individual with their weapons drawnthe record does not indicate that either officer drew his weapon;
the relative means of locomotion available to the police and to the person stoppedin this case, Daniels was on foot and burdened with the bicycle and bicycle pump while the officers were in a marked police car; Officer Williams had just exited the car to call Daniels and Officer Demma, the driver, was still in the car when Daniels was stopped;
the location and characteristics of the area where the encounter takes placeDaniels was stopped within the St. Bernard public housing development; *1286 the number of police officers involved in the encounterthere were two police officers, Williams and Demma, and Daniels was alone.
After having weighed these factors, we believe that even had Daniels not submitted immediately to the authority of the police officers, he was patted down as a result of an imminent actual stop within the meaning of the Tucker decision, and there existed at the time of the imminent actual stop no reasonable suspicion of criminal conduct such as would justify the pat down search of Daniels' person.
As noted earlier, it is not necessary to reach the question of "imminent actual stop" addressed by the Court in Tucker, since that "inquiry is necessary only for those situations wherein the police attempted to seize an individual but the individual neither submits to the police show of authority nor is physically contacted by the police." Id. at p. 44.
We find there was no reasonable suspicion to stop Daniels for questioning concerning his possession of the bicycle. There had been no report of a stolen bicycle in the neighborhood. The particular facts articulated by Demma in support of the investigatory stop are, standing alone and together, insufficient to justify infringement of Daniels' right to privacy under the Louisiana Constitution of 1974, and are totally consistent with Daniels' innocence.
We shall never know what the absent police officer, Williams, would have said about when or under what circumstances he allegedly saw a suspicious bulge in Daniels' trouser pocket. Demma's permissible hearsay testimony is that Williams allegedly noticed this bulge only after and incident to the unreasonable investigatory stop. Daniels was unable to cross-examine Williams or to put Williams himself before the trial court in order that the judge might determine his veracity from his demeanor and testimony. We have only Demma's assertion of what Williams told him about the bulge as Demma was writing up the arrest report. The combining of the preliminary hearing, motion to suppress and trial together with the accompanying stipulations that Williams would testify to the same effect as Demma and there would be no further probative evidence, has made Demma's permissible hearsay the only evidence concerning what Williams saw and when he saw it. The search for the truth of this matter is made more difficult because the circumstances of Demma's acquisition of this information from Williams are suspect. Williams told Demma about the bulge only after Demma, engaged in drafting the police arrest report, came to that portion of the report that required a statement of the officer's cause for having stopped Daniels. We are left to wonder why (if, indeed Williams noticed a bulge immediately upon leaving the police car) Williams had not warned his partner immediately of the likelihood that the bulge might represent a concealed weapon; why, if he suspected a weapon, did not Williams immediately require Daniels to "prone down," and why did not Williams even mention the bulge until the police report was being drafted. The State cannot cure the unreasonable investigatory stop with this late, questionable claim of reasonable cause for a C.Cr.P. Article 215.1 pat down search.
We find that the trial court erred in denying Daniels' motion to suppress evidence. His conviction on his plea of guilty pursuant to Crosby is reversed and the case is remanded for a new trial.
REVERSED AND REMANDED.
BARRY, J., dissents with reasons.
BARRY, Judge, dissents with reasons.
I would affirm the trial judge based on the facts and supporting law.
A police officer may temporarily detain and interrogate an individual when he reasonably suspects that individual is committing, has committed or is about to commit a crime. LSA-C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify the infringement. It must be based upon specific facts sufficiently reasonable to suspect the detained person of *1287 criminal activity. State v. Belton, 441 So.2d 1195, 1198 (La.1983); State v. Brown, 482 So.2d 115, 116 (La.App. 4th Cir.1986). An officer may conduct a limited, self-protective search for weapons in conjunction with an investigatory stop. State v. Brown, supra. Under Terry v. Ohio, supra, 392 U.S. at 27-28, 88 S.Ct. at 1883, this protective search for weapons may be made regardless of whether the officer has probable cause to arrest the individual for a crime.
In order to determine whether there was an unlawful search and seizure, it must first be determined at what point the defendant was "seized." The initial inquiry, then, is the point at which there was an "actual stop" or "imminent actual stop" of the defendant, for it is only when the defendant is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the right to be left alone is violated. State v. Belton, supra at 1199.
An "actual stop" occurs when an individual submits to a police show of authority or is physically contacted by the police. State v. Tucker, 626 So.2d 707 (La.1993) (original opinion, withdrawn from publication, reaffirmed and reinstated on rehearing by 626 So.2d 720 (La.1993); original opinion appeared at 619 So.2d 38 prior to withdrawal from publication). An "imminent actual stop" occurs when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain. Id.
The officers in this case decided to question the defendant because he was carrying a bike too small for his size and he became very nervous in the officers' presence. That is not sufficient to cause a stop. The transcript shows that the defendant voluntarily stopped when he saw the officers exit the police car. There is no indication of a "show of authority" to which defendant submitted at this point. Immediately upon exiting the car, upon the officers' approach to the defendant, Officer Williams saw a bulge in the defendant's pocket and ordered him to approach the car. At that point the defendant dropped the bike and slowly walked toward the car. The transcript does not support a finding that the defendant submitted to a show of police authority or that he was physically touched by the police prior to the officer seeing the pocket bulge. Once the officer saw the bulge there was reasonable cause to conduct a limited, self-protective search. The officers were in a high crime area with an individual who lost his composure and who acted very nervous upon seeing the officers and who had an unidentified bulge in his pocket. See State v. Brown, supra.
The majority opinion contains statements of law with which I disagree.
The opinion states that the defendant's nervousness is consistent with his innocence, then rhetorically asks: "What citizen would not appear to be nervous to some degree in the presence of uniformed police officers in a marked police car?" Although flight, nervousness or a startled look at the sight of a police officer, by itself, is insufficient to justify an investigatory stop, that type of conduct is highly suspicious and may be one of the factors leading to a finding of reasonable cause for an investigatory stop. State v. Belton, supra, at 1198. That the location is a known high crime area is also a relevant and legitimate factor. State v. Ganier, 591 So.2d 1328, 1330 (La.App. 4th Cir.1991).
The majority notes that the State suggested that the officers stopped defendant in order to offer assistance. That suggestion was made by the Assistant District Attorney, who stated: "Just because he stops and he's going to have a citizen/officer communication does not mean it is an investigatory stop. It could simply be an assistance stop...." That statement is consistent with jurisprudence, which holds that police officers do not need probable cause to arrest or reasonable cause to detain each time they attempt to converse with or approach a citizen. As long as the person remains free to disregard the encounter and walk away, there has been no intrusion under the Fourth Amendment. State v. Belton, supra at 1199.
Therefore, I respectfully dissent.
NOTES
[1] Demma's pertinent testimony follows:

"... The subject was in possession of a bicycle that he was walking. He also had an air pump that he was carrying over his shoulder. As he crossed in front of the police car, we stopped to let him cross in front of us. Upon observing us, he seemed to lose his composure and started acting very nervously. As he crossed the street, he repeatedly looked over his shoulder.... Observing his actionsand the bicycle appeared to be a child's bicycle.... We decided to exit our car and ask the subject a few questions as to actually whose bicycle it was. It didn't appear that it was his. As we exited the police car, I actually pulled into the driveway.... The subject saw us exit the police car, and he stopped. My partner got out the passenger side door while I got out the driver's side ... As we approached him cautiously, my partner observed something immediately. He instructed the subject to approach the police car, at which time my subject (sic) assisted him and placed him on the police car and immediately did a pat down for weapons. And in his front, right pants pocket removed a .32 caliber semi-automatic weapon. At which time we placed him under arrest for possession of a concealed weapon. During the course of writing out probable cause, I was writing the report, my partner informed me that as he exited the car, he immediately observed a large bulge in his pants pocket, and that's why he immediately instructed the subject to get on the police car...." Trial transcript, pages 4-5.