655 So.2d 779 (1995)
STATE of Louisiana
v.
Napoleon MOSES.
No. 94-K-0489.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1995.
*780 Herbert V. Larson, Jr., New Orleans, for relator, Napoleon Moses.
Richard P. Ieyoub, Atty. Gen., Julie E. Cullen, Timothy M. Screen, Asst. Attys. Gen., La. Dept. of Justice, Crim. Div., Baton Rouge, for respondent.
Before BYRNES, PLOTKIN and WALTZER, JJ.
BYRNES, Judge.
Throughout the history of this country, from revolutionary patriots seeking to cast off the injustices of a tyrannical monarch to modern day members of the N.A.A.C.P. seeking to cast off the injustices of a separate and unequal society, anonymity has been the necessary refuge of those who would serve worthy but unpopular causes. Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); N.A.A.C.P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). History contains too many examples of the unpopular and persecuted causes and pariahs of the past that were forced to find refuge in secrecy only to become the truths and heroes of a later day. The price we are required to pay for the protection of this refuge which our society has deemed valuable to the achievement of democratic goals is that we may have to endure some offensive speech arising from ignoble motives. We might better bear such offensive speech if we keep in mind how offensive George III must have found the anonymous and pseudonymous pamphleting of the revolutionary patriots.
On February 4, 1994, the relator was indicted for violating LSA-R.S. *781 18:1463(C)(3) by distributing or causing the distribution of campaign literature which did not contain the name and address of the person responsible for its contents. Relator was not charged with making any false statements, which is a separate offense under LSA-R.S. 18:1463(C)(1). Relator was not charged with false attribution, i.e. the use of someone else's name. (Note: False attribution is to be distinguished from the use of a fictitious name or pseudonym which is just another form of anonymity.) The trial court denied the relator's motion to quash the indictment. The relator now seeks relief from this ruling. We grant the writ; we reverse the ruling of the trial court; we grant the motion to quash; and we dismiss the case.
LSA-R.S. 18:1463(C) provides as follows:
C. (1) No person shall cause to be distributed, or transmitted, any oral, visual, or written material containing any statement which he knows or should be reasonably expected to know makes a false statement about a candidate for election in a primary or general election or about a proposition to be submitted to the voters.
(2) This Subsection shall not apply to:
(i) Statements which merely express support for or opposition to a candidate or proposition.
(ii) Statements on bumper stickers, lapel pins and stickers, lawn signs, hat bands, badges, ribbons, or to balloons, matchbooks, pens, pencils, and similar paraphernalia.
(iii) Radio and television broadcasters who broadcast paid political announcements or paid advertisements that include the voice or picture of a candidate for public office.
(3) Notwithstanding any other provision of this Subsection, however, and except for the provisions contained in Paragraph (2) of this Subsection, if an individual, association, organization, committee, or corporation is responsible for or causes the distribution or transmission of any statements relative to candidates or propositions, there shall be included thereon the name of the individual or the name of the association, organization, committee, or corporation, and the full and correct name and address of its chairman or other chief administrative officer and whether or not such individual, association, organization, committee, or corporation supports or opposes such candidate or proposition. [Emphasis added]
LSA-R.S. 18:1463(C)(3) prohibits all anonymous campaign literature regardless of whether it is true or false. Thus, the prohibition applies as much to accurate, sincere, well-intentioned literature as it does to deliberately fraudulent, malicious literature.
The U.S. Supreme Court has recently struck down a similar Ohio statute prohibiting the distribution of all anonymous campaign literature. McIntyre v. Ohio Elections Commission, ___ U.S. ___, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). In McIntyre, the Court noted that:
Insofar as the interest in informing the electorate means nothing more than the provision of additional information that may either buttress or undermine the argument in a document, we think the identity of the speaker is no different from other components of the document's content that the author is free to include or exclude.... Moreover, in the case of a handbill written by a private citizen who is not known to the recipient, the name and address of the author adds little, if anything, to the reader's ability to evaluate the document's message. Thus, Ohio's [or Louisiana's] informational interest is plainly insufficient to support the constitutionality of its disclosure requirement.
The state interest in preventing fraud and libel stands on a different footing. We agree with Ohio's submission that this interest carries special weight during election campaigns when false statements, if credited, may have serious adverse consequences for the public at large. Ohio does not, however, rely solely on Sec. 3599.09(A) to protect that interest. Its Election Code includes detailed and specific prohibitions against making or disseminating false statements during political campaigns. These regulations apply both to candidate elections and to issue-driven ballot measures. *782 Thus, Ohio's prohibition of anonymous leaflets plainly is not its principal weapon against fraud. Rather, it serves as an aid to enforcement of the specific prohibitions and as a deterrent to the making of false statements by unscrupulous prevaricators. Although these ancillary benefits are assuredly legitimate, we are not persuaded that they justify Sec. 3599.09(A)'s extremely broad prohibition.
As this case demonstrates, the prohibition encompasses documents that are not even arguably false or misleading. It applies not only to the activities of candidates and their organized supporters, but also to individuals acting independently and using only their own modest resources. It applies not only to elections of public officers, but also to ballot issues that present neither a substantial risk of libel nor any potential appearance of corrupt advantage. It applies not only to leaflets distributed on the eve of an election, when the opportunity for reply is limited, but also to those distributed months in advance. It applies no matter what the character or strength of the author's interest in anonymity. Moreover, as this case also demonstrates, the absence of the author's name on a document does not necessarily protect either that person or a distributor of a forbidden document from being held responsible for compliance with the election code.
... The right to remain anonymous may be abused when it shields fraudulent conduct. But political speech by its nature will sometimes have unpalatable consequences, and, in general, our society accords greater weight to the value of free speech than to the dangers of misuse. The State may, and does, punish fraud directly. But it cannot seek to punish fraud indirectly by indiscriminately outlawing a category of speech, based on its content, with no necessary relationship to the danger sought to be prevented.
Id. at ___ ___, 115 S.Ct. at 1519-24 (emphasis added; citations and footnotes omitted).
McIntyre is sufficient authority for striking down LSA-R.S. 18:1463(C)(3). In view of our own jurisprudence and state constitution, the state interest required to justify even a limited prohibition on electionrelated anonymous literature in Louisiana should be much more compelling than that which theoretically the U.S. Supreme Court might have found sufficient in Ohio or elsewhere. For example, City of Bogalusa v. May, 252 La. 629, 212 So.2d 408 (1968), the Supreme Court struck down a municipal ordinance prohibiting the distribution of circulars and pamphlets which did not identify the distributor.
In State v. Fulton, 337 So.2d 866 (La.1976), the defendant challenged LSA-R.S. 18:1531, which at that time prohibited the publication and distribution of any material concerning a candidate for public office, where the material did not identify the person responsible for its publication. The court found the statute to be unconstitutional, holding as follows:
In order to justify a restraint on protected expression, such as compulsory disclosure of the source of a political leaflet, the State must demonstrate that there is a compelling State interest in such restraint. Moreover, the limitation must be no greater than is necessary to protect that compelling interest.
Id. at 870. (citations omitted).
The court found that LSA-R.S. 18:1531 was not narrowly limited to those situations where the substance of the materials "has substantial connection with the governmental interests sought to be advanced. Rather, it forbids the distribution of any pamphlets and the like relating to a candidate for election unless the pamphlet discloses the name of the person responsible for its publication." Id. at 871. In so finding, the court struck down the ordinance, noting that it was "incompatible with basic constitutional guarantees." Id.
State v. Burgess, 543 So.2d 1332 (La.1989), considered the constitutionality of an earlier version of LSA-R.S. 18:1463(C), which prohibited the publication, distribution, or transmission of "any oral, visual, or written material containing any statement which makes scurrilous, false, or irresponsible adverse *783 comment about a candidate for election in a primary or general election or about a proposition to be submitted to the voters, unless the publication contains the name(s) of the person(s) responsible for its publication." Id. at 1333-34. The Court rejected the State's argument that "lies and false statements" are not constitutionally protected. Id. at 1335. The Court noted that the civil defamation standard for recovering damages for false speech concerning public figures requires a showing of "actual malice", and it found that this same standard "defines the parameters of protected speech involving public figures." Id. Because LSA-R.S. 18:1463(C) applied only to public figures and limited the distribution of merely "false" materials, not those false materials accompanied by actual malice, the court found that the statute prohibited both protected and unprotected speech. Id. The court further noted that the terms "scurrilous" and "irresponsible adverse comment" were so broad as to encompass both "true speech and protected false speech." Id. The court was also bothered by the application of this statute to propositions, stating: "By impacting on the discussion of issues before the voters, this section of the statute comes close to regulating `pure speech,' which is entitled to `comprehensive protection under the First Amendment.'" Id.
Finding that the statute infringed upon protected speech, the court then looked to see if the State showed that such restriction was justified. Although agreeing that the State has a strong interest in promoting fair elections, the court found that this interest was outweighed by an individual's right to free speech during an election. Although the first amendment protects speech generally, it was undoubtedly inspired primarily by the need to protect political speech:
The Supreme Court has noted "there is practically universal agreement that a major purpose of [the first amendment] was to protect the free discussion of governmental affairs." An important component of this right of free discussion is the right to publish anonymously. "Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all." The state has presented no compelling reason why its interest in fair elections should outweigh the fundamental right of free anonymous political discussion. Indeed, the state has presented no evidence that anonymous "scurrilous, false, or irresponsible adverse comment" has any negative effect on elections. Although the legislature has attempted to narrow the statute from that declared unconstitutional in Fulton, we find it has failed to do so. The categories of "scurrilous, false, or irresponsible adverse comment" still significantly impact on protected speech. Given the fundamental constitutional rights involved and the lack of a compelling state interest, it is clear the balance must tip in favor of free speech. Therefore, we conclude that La. R.S. 18:1463(C)(1) is incompatible with basic guarantees under the federal and state constitutions.
Id. at 1336 (emphasis added; citations omitted). The Court then found that portion of the statute[1] to be unconstitutional on its face.
With respect to the purpose of R.S. 18:1463, paragraph A provides:
The Legislature of Louisiana finds that the state has a compelling interest in taking every necessary step to assure that all elections are held in a fair and ethical manner and finds that an election cannot be held in a fair and ethical manner when any candidate or other person is allowed to print or distribute any material which falsely alleges that a candidate is supported by or affiliated with another candidate, group of candidates, or other person, or a political faction, or to publish anonymous statements that make scurrilous, false, or irresponsible adverse comments about a candidate or a proposition. The legislature further finds that the state has compelling interest to protect the electoral process, and that the people have a right *784 to know the identity of each candidate whose number appears on a sample ballot in order to be fully informed and to exercise their right to vote for a candidate of their choice. The legislature further finds that the people of this state have a right to know and that, among other things, it is essential to the protection of the electoral process that the people know who is responsible for such publications in order to more properly evaluate the statements contained in them and to informatively exercise their right to vote.
This "purpose" is almost identical to the "purpose" of the statute as it existed in Burgess,[2] which the court found was outweighed by an individual's right to free speech.
The State contends in its brief that the "defendant can provide no showing that any circumstances exist in Louisiana indicating a substantial likelihood of significant inhibitory effect upon valid expression resulting from the disclosure requirement of La. R.S. 18:1463." The defendant has no such burden. To the contrary, as also pointed out in the State's brief, the burden is on the State "to justify restraints upon a protected freedom in the instant case, freedom of expressiona state or the federal government must demonstrate a compelling interest, and the limitation must be no greater than is necessary to protect such interest."
As a practical matter, anonymous campaign literature may be the only way, for example, that unclassified government employees may be able to express political views without risking the loss of their jobs. People who have government contracts may feel the same way. Both groups may have valuable insights into governmental shortcomings that they have experienced first hand from which the public could benefit. In such cases the ability to express their views anonymously fosters the societal interests analogous to those that have led to the enactment of "whistle blower" legislation as well the desire of investigative reporters to protect the identity of their sources as a necessary adjunct of a free press. These examples are but two among many this Court could cite demonstrating, to use the standard set by the State in its brief, that there exists "a substantial likelihood of significant inhibitory effect upon valid expression resulting from the disclosure requirement of La.R.S. 18:1463."
The First Amendment to the United States Constitution provides that:
Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
U.S. Const. amend. I (emphasis added).
The Louisiana Constitution contains even stronger language bearing on freedom of expression and the right to remain anonymous in doing so:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
La. Const. art. 1, Sec. 5 (emphasis added).
No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom.
La. Const. art. 1, Sec. 7 (emphasis added).
We find that article 1, Section 7, Freedom of Expression, of the Louisiana Constitution when combined with article 1, Section 5, Right to Privacy, affords stronger protection for anonymity in Louisiana than can be found in the U.S. Constitution.
*785 As this Court only recently observed in State v. Daniels, 93-1769 (La.App. 4th Cir. 1/27/94), 631 So.2d 1281:
Louisiana enjoys the distinction of having a specifically denominated and defined constitutional right to privacy. The Louisiana Supreme Court recognized that:
"Article 1, Section 5, of the Louisiana Constitution of 1974 protects against unreasonable searches, seizures and invasions of privacy. This declaration of rights does not duplicate the Fourth Amendment [to the United States Constitution]. It represents a conscious choice by the citizens of Louisiana to give a `higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution.' State v. Hernandez, 410 So.2d 1381, 1385 (La.1982). State v. Church, 538 So.2d 993 (La.1989).["]

Id. at 1283.
When a private citizen brings a defamation suit that citizen has the burden of proving not only the defamation, but of proving the source of the defamation, i.e., the identity of the malefactor. The private citizen must bear this heavy burden without the offsetting advantage of media access available to candidates and elected officials. We believe that it is contrary to the spirit of both the United States and Louisiana Constitutions to afford special defamation protections not available to ordinary citizens to politicians at such great expense to individual rights.
We note that the courts in defamation actions allow far greater latitude in the criticism of elected officials and politicians than private individuals. See New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Cf. Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).
[I]f it be conceded that the First Amendment was "fashioned to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people" then it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office.
Monitor Patriot Co. v. Roy, 401 U.S. 265, 271-272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971). (citation omitted)
We conclude that the right to distribute anonymous campaign literature is clearly protected by the First Amendment to the U.S. Constitution as interpreted by the U.S. Supreme Court and by article 1, Section 5 and 7 of the Louisiana Constitution. Accordingly, we declare LSA-R.S. 18:1463C(3) to be unconstitutional. We reverse the ruling of the trial court, grant the motion to quash, and dismiss the case.
WRIT GRANTED; MOTION TO QUASH GRANTED; CASE DISMISSED.
NOTES
[1] The court in Burgess also struck down paragraph B of LSA-R.S. 18:1463, which prohibited the distribution of any false information concerning the support or affiliation of a candidate by another candidate, group of candidates, other persons, or political factions.
[2] The earlier version of this paragraph did not include the second sentence, which really has no bearing on the issue before this court.