665 So.2d 1267 (1995)
Warren A. GOLDSTEIN, Testamentary Executor of the Succession of Mollie Kancher
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY.
No. 95-C-2542.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 1995.
Stay Denied; Writ Denied December 14, 1995.
*1268 Robert Irby Baudouin, Boggs, Loehn & Rodrigue, New Orleans, for Relator.
Thomas Edgard Schwab, Barkley & Thompson, New Orleans, for Respondent.
Before SCHOTT, C.J., and BYRNES and WALTZER, JJ.
WALTZER, Judge.
We are called upon to exercise our supervisory jurisdiction concerning the propriety of an order issued by the trial court compelling production of certain medical records and statements. We affirm the trial court's ruling for the reasons infra.

PROCEDURAL BACKGROUND
The testamentary executor of the Succession of Mollie Kancher alleged in his petition for damages inter alia that Mollie Kancher was a resident of "Willow Wood", a residential nursing facility for the Jewish Aged, and, while residing there was attacked by another resident, Dr. Harry Glazer. The petition alleges that Dr. Glazer was known to suffer from Alzheimer's disease. The petition further alleges that Dr. Glazer grabbed the decedent, causing her to fall to the floor. Ms. Kancher broke her hip and required surgery; her pre-existing medical problems were exacerbated and she died due to kidney failure. Dr. Glazer is not a party to this law suit. The executor sued St. Paul Fire & Marine Ins. Co., the insurer of the residential facility. The gravamen of the complaint seeks to impose strict liability arising out of the negligence of Willow Wood, in failing to properly supervise and protect the decedent and to control Dr. Glazer, whom they had under their care, custody and control.
In May of this year, counsel for the executor filed a Request for Production of Documents seeking inter alia all contemporaneous and follow-up reports in connection with this incident made by Willow Wood, as well as investigative statements made by agents, employees or other representatives, containing an account of the incident alleged in the petition. Specifically, the executor requested production of statements or records reflecting Dr. Glazer's physical and mental condition before and on the date of the incident, as well as the decedent's records. In answer to these various requests, Relator St. Paul answered that all records sought were attached. In response to the executor's request for production of statements taken by St. Paul or on its behalf concerning the circumstances surrounding the incident and statements and records reflecting Dr. Glazer's physical and mental condition on 11 July 1992 or at any other time, St. Paul responded that the statements were taken in preparation for litigation, were privileged and not discoverable. This response was neither dated nor signed by Relator. In a subsequent *1269 response to the same request for statements, St. Paul answered that it did not possess any statements or records reflecting Dr. Glazer's physical and mental condition on the date of the incident. Additionally, in this second response, Relator objected to the production and copies of notes of conversations with any employee, agent or representative of Willow Wood, on the grounds that these notes would have been made in anticipation of litigation and, therefore, were privileged. (In the unsigned previous response to the motion for production, the answer to that request was simply "see attached"). The second response was dated and signed by counsel for Relator. A motion to compel a Complete Response to Request for Production of Documents was filed. The Executor complained that he had not received a copy of St. Paul's insurance policy, the records of Ms. Kancher and any other records which had been designated as being "attached" when the motion for production was answered initially. Additionally, the executor sought to compel the documents which St. Paul had designated as privileged in its first and then subsequent response to discovery. The motion to compel was filed 26 September 1995, some four months after St. Paul had answered that documents were "attached" to their undated and then dated response of 17 May 1995. Additionally, the executor moved the court for an order under LSA-R.S. 13:3715.1(B)(2)(a) for the production of all the records in the possession of St. Paul's insured, Willow Wood, pertaining to Dr. Harry Glazer, and for that order to be served personally upon Dr. Glazer. At the time of the hearing, St. Paul asserted that records of Dr. Glazer were privileged communications between a health care provider (Willow Wood) and patient, citing LSA-R.S. 13:3715.1, specifically section B(2)(a) thereof, which provides:
Any attorney requesting medical records of a patient who is not a party to the litigation in which the records are being sought may obtain the records by written authorization of the patient whose records are being sought, or if no such authorization is given, by court order, after contradictory hearing and a determination by the court that the release of the requested information is proper.
At the hearing St. Paul acknowledged that they had allowed partial discovery of statements, but withheld others, without explanation why the latter had been withheld and why these particular statements were allegedly privileged. The trial court issued a judgment 7 November 1995 directing St. Paul to file a stipulation into the record confirming that it had produced all documents in its insured's possession responsive to plaintiff's document request, with the exception of additional witnesses and Dr. Glazer's records. That same day, the trial court ordered St. Paul to produce the remainder of the statements and investigative notes pertaining to witness statements which it had withheld. The trial court further ordered Willow Wood and St. Paul to produce all (presumably medical as well as non-medical records) of Dr. Glazer pursuant to LSA-R.S. 13:3715.1(B)(2)(a).[1]
St. Paul filed this Emergency Application for Supervisory writs in the afternoon of 21 November 1995. The trial court's order had made the records returnable 23 November 1995 (Thanksgiving Day).

DISCUSSION
St. Paul, in seeking to prevent the production of documents as they pertain to Dr. Glazer, relies on L.C.E. art. 510(B)(1) which provides:
Art. 510 Health care provider-patient privilege
* * * * * *
B. (1) General rule of privilege in civil proceedings.
In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advise, diagnosis or treatment of his health condition between or among himself or his representative, his health *1270 care provider, or their representatives. (emphasis supplied).
Relators admit that they have found no jurisprudence that supports their contention that the trial court erred when she ordered discovery under LSA-R.S. 13:3715.1, but insist that there is a contradiction with L.C.E. art. 510 which should be resolved in favor of non-disclosure. St. Paul's reliance on article L.C.E. art. 510 is misplaced, because the privilege afforded thereby applies only to the patient and not to the health care provider. St. Paul has no standing to complain about the order of the trial court directed to the health care provider, Willow Wood.
Furthermore, Willow Wood is protected against any liability for the production of these records, provided all requirements of the statute have been met.[2]It is the status of Willow Wood as a health care provider which establishes the obligation to provide the records. Willow Wood (the health care provider), is not exempt from that obligation, irrespective of the fact that it is also insured by defendant St. Paul. There is no question that the executor could obtain a non-party's medical records from any other health care provider under the provisions of LSA-R.S. 13:3715.1(B)(2)(a), which sets out the procedure for the release of the records.[3] Moreover, Dr. Glazer has not voiced any objections to the subpoena served on him on 13 November 1995.
Relator asserts that the executor must show that these records cannot be obtained from any other source. Relator has provided no authority that would compel us to make "proof of unobtainability" the yardstick for production of documents in this case. Willow Wood as the health care provider of Dr. Glazer is the repository of all his records and is, therefore, in a unique position to be able to furnish the records pertinent to this litigation. Willow Wood has records showing where Dr. Glazer has been treated or observed from the date of his admission to the facility to the date of the incident giving rise to this litigation. From a practical point of view, it would clearly be exceedingly difficult and burdensome to attempt to glean and obtain records from other health care providers, wherever they may be, whenever consulted. It makes sense to discover the records from Willow Wood where all the records are in one place.
Relator suggests that the trial court inspect the records in camera to determine which records might be suitable for release to the executor. In light of his trial strategy, counsel for the executor needs to evaluate whether the records reflect anything at all about Willow Wood's adherence to federal or state mandated standards of care and methods of operation, what medications were given to what effect or, what medications should have been given, the number of times violent behavior was charted etc. In short, the information sought might not be admissible at trial, yet appears to be reasonably calculated to lead to the discovery of admissible evidence, after counsel for the executor has evaluated its content. The crux of the law suit is the health care provider's alleged negligence and what it knew or should have known about the alleged propensities of their resident, Dr. Glazer and/or the decedent. An in camera inspection is appropriate only insofar as the trial court may inspect the *1271 records to determine which records relate to the relevant time period. In the event that Willow Wood has custody of records concerning Dr. Glazer that pre-date his entrance to the facility, those records need not be discovered to plaintiff absent a proper showing made to the trial court. The trial court is free to order that all medical records produced be held in strictest confidence by all concerned until such time that the court can rule on their admissibility at trial.

THE PRODUCTION OF STATEMENTS
St. Paul contends that the trial court's order compelling production of statements of witnesses and adjuster's notes as to statements of nursing home personnel would be contrary to La.C.C.P. art. 1424, disallowing a court to order the production or inspection of any writing obtained in anticipation of litigation, unless hardship, prejudice and injustice were to result from non-disclosure.
We are unpersuaded by that reasoning in light of the fact that St. Paul disclosed some of the statements without objection, and thereby waived their objections. Moreover, St. Paul withheld statements and did not disclose why these statements were withheld or by whom the statements were made. Additionally, the statements now in possession of the executor contain apparent contradictions concerning the location of the incident. Under these circumstances the production of these documents would certainly be "for good cause", i.e. impeachment and best recollection of residents who are elderly and in some cases infirm.

THE DISCRETION OF THE TRIAL COURT
The trial court has broad discretion in discovery matters. The judge is familiar with the litigation, has dealt with the entire record to date, has observed the attorneys' conduct and their cooperation or lack thereof. Discovery statutes are to be liberally construed in order to achieve their intended objectives. The trial court did not err when she ruled that Willow Wood, in its role as a health care provider, cannot assert the privilege of Dr. Glazer and that the records and statements sought must be produced.
Accordingly, the stay order previously granted is lifted. The writ is granted and the trial court's discovery order is AMENDED to provide for in camera inspection as set forth herein, and, as amended, AFFIRMED.

WRIT GRANTED. TRIAL COURT'S DISCOVERY ORDER AMENDED AND, AS AMENDED, AFFIRMED.
BYRNES, Judge, dissenting.
I respectfully dissent. I have strong reservations in general concerning the discovery of the medical records of a non-party, and I have particular reservations in this case. Under most circumstances I find that such discovery constitutes an invasion of Louisiana's specific constitutional protection of privacy. LSA-Const. Art. 1, Sec. 5; State v. Moses, 94-0489 (La.App. 4 Cir. 5/16/95), 655 So.2d 779). The right to privacy of medical records was recognized long before either the U.S. Supreme Court discovered privacy rights in the penumbra of the U.S. Constitution or Louisiana adopted the right to privacy as part of the state constitution.
LSA-R.S. 13:3715.1(2)(a) provides no standards for the discovery of non-party medical records. Unless the non-party expressly waives objection to disclosure, the party seeking discovery should be required to show compelling reasons on the record sufficient to offset the strong public policy protecting the privacy of medical records. The party seeking discovery should show that the social utility of her claim is sufficiently superior to that of the non-litigant's constitutional right to privacy to justify the commission of what would otherwise be a tortious invasion of the privacy of a non-litigant in order to further the tort recovery of the litigant, bearing in mind that the tort claim in this case does not have the same constitutionally protected status afforded the non-party's medical records. In effect, we have an alleged tort competing for priority over a definite tort.
NOTES
[1] Like most nursing homes, Willow Wood documents activities, changes and developments of patients in staff notes, conference reports of supervisory personnel, family get-togethers and observed behavior at social functions.
[2] La.R.S. 13:3715.1(C) provides:

No health care provider, employee, or agent thereof shall be held civilly or criminally liable for disclosure of the records of a patient pursuant to a subpoena of summons which is accompanied by such an affidavit issued by the person requesting the records, provided that the health care provider has not received a copy of the petition or motion indicating that legal action has been taken to restrain the release of the records. No health care provider, employee, or agent thereof shall be held civilly or criminally liable for disclosure of the records of a patient pursuant to a court order which is valid on its face, provided that the health care provider has not received a copy of the petition or motion indicating that legal action has been taken to restrain the release of the records.
[3] (2)(a) Any attorney requesting medical records of a patient who is not a party to litigation in which the records are being sought may obtain the records by written authorization of the patient whose records are being sought or if no such authorization is given, by court order, after contradictory hearing, and a determination by the court that the release of the requested information is proper.